EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: | Queja |
| Libertad Díaz Ortiz | 2000 TSPR 53 |

Número del Caso: AB-1998-0025

Fecha: 29/02/2000

Oficina del Procurador General:     Lcda. Ivonne Casanova Pelosi

Abogado de la Parte Querrellada:    Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

In re:

Libertad Díaz Ortiz          AB-98-25          Conducta
                                               Profesional

PER CURIAM

San Juan, Puerto Rico, a 29 de febrero 2000

Nos toca examinar el incumplimiento de un notario con el Artículo 39 de la Ley Notarial, al haber expedido una copia certificada alterada en su contenido, de una escritura original otorgada ante él.

I

El 12 de diciembre de 1995 el Sr. Ezequiel Cruz Robles acudió ante el Procurador General para querellarse contra el Lic. Libertad Díaz Ortíz por el motivo de que otorgó ante él la escritura número 17 de 17 de abril de 1992, sobre Cesión de Acciones y Derechos, y que a diciembre de 1995, la referida escritura no había sido presentada e inscrita en el Registro de la Propiedad. Ante los requerimientos de la Oficina del Procurador, en relación al status de la escritura en controversia, el querellado Díaz explicó, mediante comunicación de fecha 28 de diciembre de 1995, que al ser presentada la escritura en el Registro de la Propiedad, el Registrador denegó su inscripción por motivo de que en una de las cláusulas de la escritura, la número diez, se hacía constar en cuanto a la capacidad mental de una de las otorgantes, que aunque tenía ciertas limitaciones mentales, podía firmar el contrato de compraventa con la supervisión y

orientación de sus hermanos. El Registrador le requirió al abogado que tramitara la correspondiente autorización judicial, gestión que ya había iniciado el querellado al momento de presentarse la queja. Esto es, el 15 de noviembre de 1995, el querellado había presentado ante el Tribunal de Primera Instancia de Bayamón, la solicitud de autorización judicial requerida para proceder con la inscripción del referido instrumento.

Posteriormente, mediante carta de fecha 30 de abril de 1996, el querellado informó al Procurador General que la escritura en controversia había sido presentada nuevamente al Registro de la Propiedad de Bayamón, Sección I, e inscrita el 22 de abril de 1996. Incluyó con dicha comunicación una supuesta copia certificada de la escritura número 17 de fecha 17 de abril de 1992 y el Informe Médico Psiquiátrico y de Evaluación Psicológica que alegadamente hacía académica la autorización judicial.

Al comparar la copia presentada por el quejoso con la copia certificada que envió el querellado a la Oficina del Procurador General como la que había sido presentada e inscrita, el Procurador se percató de que, aunque supuestamente se trataba de la misma escritura número 17 del 17 de abril de 1992, las copias no eran idénticas, ya que la que envió el querellado no contenía la cláusula décima sobre la incapacidad de la otorgante a la cual aludimos anteriormente. Esto provocó que se le solicitara al querellado copia simple del original según obraba en su protocolo del año 1992, lo cual en efecto reflejó que la copia certificada enviada para evidenciar que la transacción había sido inscrita debidamente en el Registro de la Propiedad, no contenía la cláusula décima que en efecto contenía el original del instrumento público autorizado el 17 de abril de 1992.

Ante la posibilidad de que hubiera ocurrido una falsificación de firmas, la Oficina del Procurador General remitió el asunto a la Oficina de Investigación y Procesamiento Criminal del Departamento de Justicia para que se investigara si había ocurrido alguna violación a los Artículos 271 y 272 del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 4591 y 4592, sobre Falsificación de Documentos y Posesión y Traspaso de Documentos Falsificados. Luego de la investigación correspondiente y de revisar el expediente que suplió el Procurador General y después de haberse citado tanto al querellante como al querellado, y considerada la evaluación de la certificación registral relativa a la finca en cuestión, dicha Oficina sorpresivamente concluyó que no se cometió delito alguno pero que ciertamente se faltó a la fe notarial al certificar que la copia era fiel y exacta del original cuando en efecto no lo era.

El Procurador General acogió las Conclusiones del Informe de la Oficina de Investigaciones. Determinó que el notario querellado

certificó como copia fiel y exacta de la escritura número 17 el documento que finalmente logró acceso registral, cuando en realidad no lo era, constituyendo dicha certificación una aseveración falsa ya que en la supuesta copia no aparecía la versión original de la cláusula diez relacionada con la incapacidad mental de una de las otorgantes.

Concluyó el Procurador que al certificar falsamente como copia de la escritura número 17 del 17 de abril de 1992, el documento presentado al Registro de la Propiedad, el notario incumplió con su deber de expedir copias certificadas tal y como lo dispone el Artículo 39 de la Ley Notarial de Puerto Rico, faltando así a la veracidad de los hechos, a su fe notarial y al Canon 18 de Ética Profesional que taxativamente impone a los abogados la obligación de defender diligentemente los intereses del cliente, pero sin recurrir a la violación de las leyes o a cometer engaños para sostener su causa. A iguales conclusiones ha llegado la Directora de la Oficina de Inspección de Notarías en su bien fundamentado informe respecto a las graves actuaciones del referido notario.

El querellado ha aceptado por escrito y sin reservas que llevó a cabo las actuaciones descritas por el Procurador General en su Informe. Niega, no obstante, que haya actuado con intención de defraudar o de violentar la Ley Notarial, aunque acepta no haber sido suficientemente riguroso y que "posiblemente en este asunto pudimos haber violado la letra de la Ley Notarial."

El notario, aunque se somete a la jurisdicción disciplinaria del Tribunal aceptando los hechos y disponiéndose para desplegar las gestiones necesarias para remediar la situación de la cual es responsable, según ordenáramos en nuestra Resolución de 17 de julio de 1998[1], ruega al Tribunal tomar en consideración las razones que lo llevaron a eliminar en la supuesta copia certificada la cláusula ya descrita y presentar la misma al Registro antes de que recayera la autorización judicial correspondiente. Reitera que cometió un error de

---

[1] Tomamos conocimiento judicial de la sentencia del Tribunal de Circuito de Apelaciones de 15 de diciembre de 1999, donde se confirma una sentencia del Tribunal de Primera Instancia que declara sin lugar una solicitud de desistimiento presentada por el Lic. Díaz Ortiz. En su lugar concluyó que la Sra. Carmen Gisela García Kuilan está incapacitada mentalmente, y por tanto incapaz de otorgar la escritura en cuestión. Se ordenó a la Procuradora Especial de Relaciones de Familia a instar las acciones correspondientes para salvaguardar los derechos de la incapacitada.

juicio, que existían factores concurrentes relacionados con su grave estado de salud que hicieron crisis en el momento de los hechos (grave condición cardíaca, hipertensión arterial, glaucoma, diabetes crónica). Acompaña a su escrito una certificación médica que reitera lo expresado por él. Aduce, además, que no están presentes agravantes tales como el deseo de lucro ni elemento malsano, sino remediar la grave situación de la familia Kuilan, dueños de una propiedad en peligro de ser ejecutada, ya que un acreedor hipotecario de dicha familia interpuso una demanda sobre Ejecución de Hipoteca por la vía ordinaria, deuda que fue declarada vencida en su totalidad, por lo que tal familia se vio en necesidad de vender la propiedad con premura, todo esto antes de la intervención del abogado. Luego de la venta y ante la insistencia del comprador para lograr inscribir su propiedad, se ofuscó y cometió los errores descritos.

## II

Tanto los Canones de Ética Profesional como la Ley y el Reglamento Notarial imponen a los notarios el deber de ejercer su función con honradez y sinceridad, exaltando los valores de dignidad y honor de la profesión. Véase In Re: Torres Olmeda, Res. el 23 de abril de 1998, 98 T.S.P.R. 48. Cuando un notario, custodio de la fe pública, autoriza un documento, da constancia de que la transacción involucrada es una legítima y válida, lo que brinda eficacia y garantía a ese instrumento notarial. In Re: Ramos, 104 D.P.R. 568 (1976); In Re: Rivera Arvelo y Ortiz Velázquez, 132 D.P.R. 840 (1993).

El Artículo 39 de la Ley Número 75 del 2 de julio de 1987 conocida como Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2061, dispone lo siguiente:

> "Una copia certificada es el traslado literal, total o parcial de que un documento otorgado ante Notario, que libre éste o el que tenga legalmente a cargo su Protocolo con certificación respecto a la exactitud del contenido y números de folios que contenga el documento, así como la firma, signo y rúbrica y en todos los folios, el sello y rúbrica del notario autorizante."

Al certificar falsamente que el contenido de la escritura presentada mediante el asiento de presentación número 121 era idéntico el original que constaba en su protocolo el querellado incurrió en violación al Artículo 39 antes señalado. La grave actuación del notario de expedir una copia certificada donde se ha alterado el contenido del original de

una escritura pública violenta la fe pública notarial, espina dorsal de la función del notario. <u>In Re: Feliciano Ruíz</u>, 117 D.P.R. 269 (1986).

La doctrina general establece que es a través de las copias certificadas que opera la eficacia del instrumento público original, ya que éste queda incorporado al protocolo del notario. <u>In Re: Rossana Miranda Morales</u>, Res. el 5 de mayo de 1997, 143 D.P.R. ___ (1997); E. Gimenez-Arnau, Derecho Notarial, Pamplona Ed. Univ. Navarra, 1976, Vol. IV, pág. 827; A. Neri, Tratado Teórico y Práctico del Derecho Notarial, Buenos Aires, Ed. Depalma, 1969, Vol. III pág. 1083 et seq.

Por otra parte la Regla 49 del Reglamento Notarial sobre Certificación de Copia, 4 L.P.R.A. Ap. XXIV, R. 49, dispone en su parte pertinente que la certificación ha de indicar si es certificación de concordancia total o parcial con el original. Se exige que la copia de la escritura matriz sea reproducción íntegra de ésta para que surta todos los efectos que la ley le otorga. Al certificar falsamente que la copia certificada era reproducción fiel y exacta del original, el notario también incurrió en violación al Art. 49 del Reglamento Notarial, supra. Este Tribunal ya ha resuelto en varias ocasiones que faltar a la veracidad de los hechos constituye una de las faltas más graves en que pueda incurrir un notario. <u>In Re: Vera Vélez</u>, Res. el 5 de abril de 1999, 99 T.S.P.R 46; <u>In Re: Iglesias Pérez</u>, Res. el 30 de junio de 1998, 98 T.S.P.R 101; <u>In Re: Torres Olmeda</u>, supra.

### III

Dentro del marco doctrinal analizado, la presentación en el Registro de la Propiedad de una copia certificada que no reproduce literalmente el contenido del original, provoca una inscripción ineficaz, cuyo asiento descansa sobre bases documentales equivocadas. La falta del requisito esencial de validez del instrumento produce la invalidez del documento que refleja el negocio jurídico. E. Giménez-Arnau, Op. Cit. Vol. III, pág. 459.

Para remediar la ineficacia de la inscripción efectuada es preciso recurrir al tribunal con una petición para que se anule la inscripción registral en cuanto a la venta hecha por la incapacitada mental. Ello implica, además, la anulación del negocio jurídico constituido en cuanto a la participación de ésta y se ordene la paralización de la inscripción de cualquier hipoteca que esté pendiente de inscripción o de cualquier

otro documento hasta que se resuelva la titularidad de la finca en cuestión. Por tanto, la actuación del querellado ha causado gran dilación en la consecución deseada por las partes de llevar a cabo el negocio de compraventa en cuestión, además de gastos y otros inconvenientes a éstas.

Por otro lado, la certificación de un hecho falso constituyó un acto detrimental a la fe pública; incurriendo además dicho notario en violación al Canon 35 de Ética Profesional, 4 L.P.R.A., Ap. IX, C.35, que prohíbe utilizar medios inconsistentes con la verdad, o inducir al juzgador en este caso al Registrador de la Propiedad a error utilizando artificios o falsa relación de los hechos. In Re: Vera Vélez, Res. el 6 de junio de 1994, 136 D.P.R. ___ (1994). Al pretender el abogado querellado solucionar el problema resultante de la incapacidad mental de uno de los otorgantes, alterando la copia certificada de la escritura, en lugar de proseguir el trámite iniciado de autorización judicial, incurrió en una violación al Canon 18 de Ética Profesional, el cual dispone lo siguiente:

> Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

> Este deber de desempeñarse en forma capaz y diligente no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente. La misión del abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra de ésta, sino el espíritu y los propósitos que la informan.

Véase, además, In Re: Cardona Ubiñas, Res. el 29 de julio de 1998, 98 T.S.P.R 114; In Re: Osorio Díaz, Res. el 30 de junio de 1998, 98 T.S.P.R 103.

## IV

Como es sabido, al determinar la sanción disciplinaria aplicable al abogado querellado, podemos tomar en cuenta factores como la reputación del abogado en su comunidad, el previo historial de éste, si es su primera falta, la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, resarcimiento al cliente y cualesquiera otras consideraciones ya bien atenuantes o agravantes que medien de acuerdo a los hechos.

Véase In Re: Padilla Rodríguez, Res. el 18 de mayo de 1998; 98 T.S.P.R 56; In Re: Ortiz Velázquez, Res. el 15 de abril de 1998; 98 T.S.P.R 42; In Re: Varcárcel Mulero, Res. el 15 de noviembre de 1996, 142 D.P.R.___ (1996); In Re: Fernández Paoli, Res. el 6 de junio de 1996, 141 D.P.R.___ (1996).

Es por ello que en atención a todo lo previamente expuesto y por considerar que la grave actuación del notario violó los Canones 18 y 35 de Ética Profesional; el Artículo 39 de La Ley Notarial y la Regla 49 del Reglamento Notarial, violentando de tal modo la fe notarial, menoscabando así la confianza pública en él depositada, y provocando a su vez la inscripción de una titularidad sujeta a ineficacia en derecho, se dictará sentencia ordenando la separación inmediata del querellado Libertad Díaz Ortiz del ejercicio de la abogacía por tiempo indefinido, así como la incautación de toda su obra notarial.

In re:

Libertad Díaz Ortiz                    AB-98-25 Conducta
                                                Profesional


SENTENCIA


San Juan, Puerto Rico, a 29 de febrero 2000

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se ordena la separación inmediata del querellado Libertad Díaz Ortiz del ejercicio de la abogacía por tiempo indefinido.

El Alguacil de este Tribunal se incautará inmediatamente de su obra y sello notarial para el trámite correspondiente por la Directora de la Oficina de Inspección de Notarías.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García no interviene. Los Jueces Asociados señora Naveira de Rodón y señor Fuster Berlingeri no intervinieron.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo